SERRANO, PLAINTIFF AND APPELLANT, *v.* SUCCESSION OF SANTOS, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Arecibo in Injunction Proceedings to Recover Possession of Property.

No. 1449.—Decided June 24, 1916.

INJUNCTION TO RECOVER POSSESSION OF REALTY—COMPLAINT—VERIFICATION—OBJECTION.—According to the Act of 1913 relating to injunctions to recover material possession of real property, the complaint should be verified. Nevertheless, although the affidavit does not conform exactly to the provisions of section 118 of the Code of Civil Procedure, if it does not appear that it was objected to by the defendant before the trial was begun and by the testimony of witnesses the facts alleged by the plaintiff were established, the existing defect could not serve as a basis for the dismissal of the complaint.

ID.—POSSESSION—TENANCY—LEASE.—The words "material possession" used in Act No. 43 of 1913, include the meaning of "possession" and "tenancy" of article 1649 of the old law of civil procedure. Although the owner leases his property he does not relinquish all control thereover, especially as to the material possession, and it may be maintained that he continues in that possession through the lessee.

ID.—DESCRIPTION OF PROPERTY—CORRECTION OF DEFECT.—The failure of the complaint to describe properly the exact portion of land claimed may be supplied by evidence produced at the trial.

ID.—VIOLENCE—PHYSICAL FORCE—DISPOSSESSION.—The violence required by Act No. 43 of 1913 does not necessarily mean the use of physical force or deceit. It is sufficient that the dispossession be effected against the will of the party in possession or without his consent.

ID.—SURVEY—DIVIDING LINE.—When in making a survey of a property one of the adjoining owners is not in accord with the dividing line as traced by the surveyor of the other party, recourse must be had to the courts to adjust the conflict.

APPEAL—STATEMENT OF CASE—OMISSION—EVIDENCE.—Although a letter introduced and admitted in evidence at the trial is not copied into the statement of the case, if from the other data therein it is possible to determine the nature of the omitted letter and thus the conclusion is reached that the letter would not change in any manner the opinion of the appellate court in regard to the reversal of the judgment appealed from, the omission of such letter cannot serve of itself alone as a basis for the affirmation of the judgment.

The facts are stated in the opinion.

*Mr. Luis Mercader* for the appellant.

*Mr. Félix Santoni* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action for an injunction to recover the material possession of a certain parcel of land and is based on Act No. 43 of 1913.

In the complaint filed on September 1, 1915, it is alleged that the plaintiff is the owner of a certain rural property of eight *cuerdas* of land situated in Sabana Hoyos, Arecibo, which is described in the customary manner, and that on August 29 and 30, 1915, the defendants forcibly deprived the plaintiff of a strip of land of her said property, "about three meters in width along the entire southern extension of the land adjoining the defendants' property, the said strip being bounded on the. south by the land of the said defendant succession and on the north by the rest of the property of the plaintiff and containing a large number of coco palms." The complaint also contains the usual allegations of actions of this kind.

The defendant succession demurred to the complaint and answered it in due form. Both parties introduced their evidence at the trial and on October 23, 1915, the court rendered judgment against the plaintiff who thereupon took the present appeal.

The judgment appealed from is based on various grounds, namely: (1) That the verification of the complaint is defective; (2) that the plaintiff has no cause of action because she failed to show that she was in actual possession of the land claimed; (3) that the property was not described in accordance with the provisions of section 125 of the Code of Civil Procedure; (4) that the evidence was not sufficient to prove plaintiff's title; (5) that the evidence was also insufficient to determine the exact piece of land claimed; and (6) that forcible entry by the defendant was not shown.

1. We have examined the verification of the complaint made by the attorney for the plaintiff and find that it does not in fact conform exactly to the requirements of section

118 of the Code of Civil Procedure. However, as it does not appear that the said verification was objected to by the defendant and as the case went to trial and the plaintiff's allegations were established by the testimony of duly sworn witnesses, as we shall see later, the existing defect could not and should not serve as a ground for dismissal of the complaint.

2. In its judgment the district court expressed itself as follows:

"The object of the injunction provided for by section 1 of Act No. 43 of 1913 is to recover the material possession of real property when a party shows that he has been deprived of such possession, and in the present case we find, as may be deduced clearly from the evidence of the plaintiff, that she was not in the material possession of the property described in the complaint as belonging to her, but that such possession was held by José Santiago Román, who therefore would be the proper person to bring the action authorized by Act No. 43 of 1913; inasmuch as the action for an injunction to recover possession may be brought only by the person in the actual possession or tenancy of the property, whether the lawful owner or a mere deforciant."

In our opinion the conclusion of the trial judge is untenable because incompatible with the spirit of Act No. 43 of 1913.

Section 1 of said act reads as follows:

"That an injunction to restore the material possession of real property shall be granted where a party shows to the court that he has been deprived of such material possesion by the forcible or fraudulent acts of another, unless such acts were done by virtue of legal process."

Article 1649 of the former Law of Civil Procedure for Cuba and Porto Rico provides as follows:

"Summary proceedings to retain or recover possession shall lie when the person who is in possession or in the tenancy of a thing has been disturbed therein by acts that show the intention of molesting or dispossessing said party, or when said party has already been disseized of his possession or tenancy."

Commenting on the above article Manresa says:

"It may be deduced from the foregoing that summary proceedings to recover possession may be brought not only by the owner and usufructuary, who are the persons having lawful *possession,* but also by the tenant, lessee, settler, trustee and pledgee, and even by a person holding forcibly, clandestinely, or by request, who are only in the *tenancy* of the thing." VI Manresa, Law of Civil Procedure, 139.

In our opinion the words "material possession," employed in the statute now in force, embrace the ideas of possession and tenancy of the old law. By leasing his property the owner does not dispossess himself absolutely of the material possession, for it may be held that he continues in such possession through the agency of the lessee.

3. A perusal of the description of the strip of land which the complaint alleges the defendant seized is sufficient to produce the conclusion that the trial judge was right in holding that it did not meet the requirements of section 125 of the Code of Civil Procedure. The description given is confusing and it would be difficult to identify the strip of land claimed by that description alone. Nevertheless, the defect pointed out was corrected by the evidence introduced at the trial, as we shall see later.

4. While it is true that the plaintiff introduced no public or private document to prove her ownership of the property in question, her right of ownership was established so clearly by the testimony of many witnesses that we cannot understand how the judge of the district court could assign the failure of the plaintiff to prove her title as one of the grounds of his judgment, especially in an action in which the fact of possession was at issue. Even the defendants acknowledged the title of the plaintiff in negotiating with her as the real owner of the land adjoining their property on the north for the purpose of undertaking to make a survey with her consent, as we shall see later.

5. We have said that the error committed by the plaintiff

in failing to describe properly in the complaint the strip of land claimed was rectified at the trial.

Plaintiff Gregoria Serrano testified as follows:

That the defendant took possession of a strip of her land on the southern boundary of her property "two yards wide and running to nothing." Questioned by the court she said "The strip is two yards wide below and has very little width above; that starting from her property the Borrero people have taken a strip of land two yards wide going up. They made an angle only where the coconut grove is." Questioned by her attorney, she said: "That the coconut grove belongs to her; that they took two meters of land and formed an elbow, taking the grove and cutting towards the lower part, the strip being narrow above and wide below, like a strip, an angle, an elbow, or a curve." Questioned by the attorney for the defendants, she said: "That she had said that the strip of land is two yards wide and runs to nothing, like a curve; in some places it is two yards wide and in others nothing."

Witness José Santiago, who occupied the property of the Serrano woman at the time of the seizure of the strip of land claimed, testified that the Succession of Santos had taken a part of the property of eight *cuerdas* about two or three yards wide and running to nothing from south to north, taking it from east to west of the property of Gregoria Serrano; that the wire fence on the boundary line is now outside of the wire fence put up by the Borreros.

Francisco Moreda, son of the former owner of the plaintiff's property, testified that the defendants themselves conducted him to the property and added, among other things, "that when he went to see the southern boundary of the said property he noticed that a line which had been run by order of the Borrero people extended into the property of Gregoria Serrano along the whole length of it, including a strip two or three yards wide, taking in a coconut grove in which guinea grass was being grown; * * * that he knows that

the coconut grove belonged to our property, which is now owned by Gregoria Serrano, and that nobody questioned that fact until now, as it has always been a part of said property."

Nicolás Moreda said that he knew the plaintiff's property "which contained coco palms on the southern boundary; * * * that the part containing the palms belonged to the property of eight *cuerdas.*"

Martín Soto testified that he had lived on the defendants' property; that the wire fence which now separates the said property from that of the plaintiff is on the latter's property; "that on the south side of the property of eight *cuerdas* there is a coconut grove planted with guinea grass"; that that part belongs to the property of Gregoria Serrano.

This witness was delegated to deliver the property to the defendants when they purchased it, and he testified that when he pointed out the boundary marks "the strip of land in question belonged to Manuel Moreda and now belongs to Gregoria Serrano." In answer to questions put by the court he testified "that during all the time he was on the Borrero property (now owned by the defendants) there was nothing to separate it from the Moreda property (now owned by the plaintiff); that there was no dividing line then; that *the coconut grove marked the dividing line between the properties;* that he believed that the coconut grove belonged to the Moreda property and not to the Borrero property, for he had known it previously; that the properties were separated by the coconut grove situated on the property of Gregoria Serrano; that he based his assertion on the fact that it had been so regarded for many years; that he knew that it had been so considered for at least forty years; that he delivered possession three or four years ago; that he was in charge of the property for six or seven months and before he took charge of it he lived on the property."

Vicente Rodríguez testified that he had known the property of eight *cuerdas* for about forty years; "that prior to the

said month of August the strip containing the coconut grove formed part of the property of eight *cuerdas* belonging to Gregoria Serrano; that for more than fifteen years he knew this to be true.''

And, finally, Leandro Rodríguez testified ''that the said property of the Santos Succession belonged to his grandfather and therefore he was familiar with the southern boundary; that from the time he first knew of the strip containing the coconut grove and guinea grass it formed part of the property which belonged to the Moreda Succession and is now owned by Gregoria Serrano, and that his grandfather and the children and grandchildren always regarded it as such; that for more, than fifteen years Gregoria Serrano had disposed of the coconuts and guinea grass growing on that strip.''

The foregoing is the evidence of the plaintiff. We will now quote a certain part of the testimony of the first witness for the defendant which strengthens and completes the evidence of the plaintiff. The said witness was the surveyor whom the defendants employed to make the survey, to which we shall refer later, and he testified that in order to determine the northern boundary, or the southern boundary of the property of eight *cuerdas,* he notified the owner of the latter and Santiago, the *husband* of Gregoria Serrano, came and said to him that ''the points marking the boundary lines were clear,'' that they were an *ortegón* tree at the foot of a clump of rose-apple trees and an *ortegón* stump on the other corner. That Santiago admitted that the boundary line would include two or three palms. That Santiago left; ''that when he went to run the line he saw at a glance that it would include not the two or three palms, as he said, but all of them; and thereupon he said: 'Let us determine and mark the boundary and I will then notify Gregoria Serrano and José Santiago that all the palms are included.' ''

Although from the testimony of the witnesses it is impossible to form an exact figure of the strip of land claimed,

they have identified it in such a manner that the officer charged with the execution of the judgment which may be rendered would have no difficulty in doing so. The two extremes of the southern boundary of the plaintiff's property and the northern boundary of the defendant's property are clear. On one corner there is an *ortegón* tree at the foot of a clump of rose-apple trees and on the other another *ortegón* tree. The difficulty arose when an attempt was made to run a straight line between these two points. This line did not really mark the boundary, but it was marked by the last palms on the south of the grove described by the witnesses and situated on the property of eight *cuerdas*.

6. Finally, the trial court holds that as it was not shown that the defendants used force, an injunction could not be granted and also that the evidence tended to show that the boundaries were definitely fixed by the survey which was made by virtue of a perfectly legal proceeding and after the adjoining owners had been summoned.

As to the survey, we will say that the evidence really shows that the defendants employed a surveyor to survey their property and that the plaintiff was cited to be present, but it also shows that the plaintiff never expressed her conformity with the boundary line as determined by the surveyor employed by the defendant succession. This being so, the survey is of no effect. When one of the adjoining owners failed to agree the other had no right to fix the boundary line himself, for no one may take the law in his own hands but must seek his remedy in the courts, "inasmuch as the courts are established so that men may obtain justice through them and not by their own acts." Law XIV, Title X, *Partida* VII.

As to the employment of force, we will say that, as already held by this court, Act No. 43 of 1913 does not require the employment of physical force or fraud, it being sufficient that the dispossession be accomplished against the will of

the possessor or without his consent. *Mattei* v. *Badillo*, 21 P. R. R. 159.

7. It only remains to consider the following question which the appellees raised in their brief:

"Moreover, the statement of the case does not contain all of the evidence, for we have searched it in vain for a letter admitted in evidence; therefore, the doctrine is applicable that in case of failure to include in the record all the evidence introduced in the trial court the judgment should be affirmed."

After examining the statement of the case we find that it is true that when Benigno Martínez Badía, one of the defendant's witnesses, was testifying he was shown a letter written by him to surveyor Puig regarding the survey. The witness identified the letter and it was admitted in evidence, but it does not appear to have been included in the statement of the case. In view, however, of the attendant circumstances the omission of the letter from the record cannot serve as a ground for the affirmance of the judgment appealed from.

It seems that the letter in question tended to prove that the said witness, who acted for the plaintiff at the survey, had expressed his conformity with the boundary line run by surveyor Puig. Conceding that this is true, such conformity could not definitely conclude the rights of the plaintiff, for it is not shown that she had authorized the witness to consent thereto. On the contrary, the witness who, as we have said, was called by the defendants, testified under oath "that Gregoria Serrano did not authorize him to cede the strip of land included within the said boundary line; that Gregoria Serrano never consented to this."

Therefore, it is obvious that the letter would not have the effect of changing the opinion which we have formed of the case, and in such circumstances we repeat that the failure to include the same in the transcript of the record is no ground for the affirmance of the judgment appealed from.

In short, we will say that an examination of this case

reveals errors and omissions on the part of the plaintiff-appellant from the filing of the complaint to the submission of the appeal to this court. However, as we have seen, such errors and omissions are not of such a character as to deprive her of the justice and relief prayed for. There is no doubt in our minds that the plaintiff was in possession of the strip of land claimed, and that the defendant succession took possession of it against her will. If the defendant succession believes that it has a better right to the ownership of the said strip of land it may assert that right before the proper court in the proper manner, but it cannot be permitted to take *justice* in its own hands.

In view of the foregoing, the judgment appealed from is reversed and another rendered re-establishing the *status quo* existing prior to the survey made by order of the defendants.

*Reversed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.